UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**TODD T. JANNEY, SR.**  CASE NO. **14-11278**
**SHANNON JANNEY**
    DEBTORS

**BBI ARCHITECTURAL SERVICES**
    PLAINTIFF

V.  ADV. NO. **15-1027**

**TODD T. JANNEY, SR.**
    DEFENDANT

## MEMORANDUM OPINION

Plaintiff BBI Architectural Services ("BBI") sued Todd T. Janney, Sr. ("Janney") to have Janney's debt to it declared nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (B). This opinion explains why Janney's debt to BBI is nondischargeable pursuant to Bankruptcy Code §523(a)(2)(A).

*Facts*

BBI sued two companies Janney owned, Physician's Choice Physical Therapy, Inc. ("PCPT") and Physician's Choice Physical Therapy of Livingston Parish, Inc. ("PCPTLP"), for unpaid pre-petition architectural services.[1] The defendants settled with BBI for $22,500, payable in installments. Janney signed the settlement agreement and the October 23, 2013 promissory note both on his behalf and also as president of his closely held corporations. BBI did not know when the agreement was signed that neither Janney company remained in business: PCPTLP had

---

[1] *BBI Architectural Services v. Physicians' Choice Physical Therapy, Inc. and Physicians' Choice Physical Therapy of Livingston Parish, Incorporated*, Docket No. 126394 in the 21st Judicial District Court for Livingston Parish, Louisiana.

shut its doors in 2010 and PCPT had ceased operations by May of 2012 according to Janney's bankruptcy schedules, though in testimony Janney stated it had likely closed prior to that date.[2]

In accordance with the settlement, the parties to the litigation joined in a November 21, 2013 consent judgment that cast Janney himself in judgment to BBI *in solido* with PCPT and PCPTLP, though Janney was not a party to the lawsuit for reasons not made plain in the record. BBI later agreed to amend the judgment and remove Janney as a judgment debtor.[3] PCPT, which had been closed for at least sixteen months, made the only two payments on the settlement and neither PCPT nor PCPTLP made any payments after the consent judgment was amended.[4]

Janney and his wife filed chapter 7 on October 8, 2014. BBI timely sued to have Janney's debt to it declared nondischargeable under 11 U.S.C. §523(a)(2)(A) and (B). The court consolidated this adversary proceeding for trial with the claims in *Rebecca Adams, LLC v. Todd T. Janney, Sr.* (Adv. No. 15-1026).

*I.  False Representation and Actual Fraud pursuant to §523(a)(2)(A)*

BBI's lawsuit centers on Janney's actions negotiating a settlement and consent judgment. BBI claims that Janney misled it into settling with PCPT and PCPTLP when neither company remained in business. This, it contends, renders Janney's debt to it nondischargeable under Bankruptcy Code §523(a)(2)(A). That provision excepts from discharge debts obtained by "false pretenses, false representation, or actual fraud…."

The Fifth Circuit has developed two separate tests for dischargeability claims under §523(a)(2)(A), predicated on which element of the statute the plaintiff is basing its claim.

---

[2] Testimony of Todd Janney, February 4, 2016, p 331, lines 12–21.

[3] January 9, 2014 Amended Consent Judgment (Exhibit 4).

[4] Testimony of Brent Bueche, Feb. 4, 2016, p. 311, line 24 – p. 312, line 2. BBI received the first payment, for $1,045.00, on November 15, 2013. It received a second payment, for $500.00, on December 6, 2013.

"When defining the elements of nondischargeability, the Fifth Circuit has distinguished between actual fraud on one hand and false pretenses and false representations on the other." *In re Quinlivan*, 347 B.R. 811, 820 (Bankr. E.D. La. 2006), *aff'd,* 2007 WL 1970980 (E.D. La. June 29, 2007).

BBI argues that the debt is nondischargeable under section 523(a)(2)(A) both as having arisen through the debtor's actual fraud but also as a result of his false representation. It contends that Janney committed both actual fraud and a false representation when he signed the promissory note and settlement agreement obligating companies he knew were not operating to pay a $22,500 debt.

### A. Janney Committed a False Representation When He Induced BBI to Settle with Two Non-Operating Businesses

BBI alleges that Janney's conduct fell within the scope of Bankruptcy Code §523(a)(2)(A) as a series of false representations that PCPT and PCPTLP were operational. In other words, it contends that Janney misled BBI by defending its lawsuit and negotiating a settlement on behalf of his defunct businesses.

A debtor's false representation or false pretense falls within §523(a)(2)(A) if it was "(1) [a] knowing and fraudulent falsehood …, (2) describing past or current facts, (3) that [was] relied upon by the other party." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292–93 (5th Cir. 1995) (citing *In re Alison*, 960 F.2d 481, 484-85 (5th Cir. 1992); *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)). "Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A)." *In re Selenberg*, No. 14-10382, 2015 WL 5579697 at *2 (Bankr. E.D. La. Sept. 21, 2015), *aff'd,* 2016 WL 3034165 (E.D. La. May 27, 2016). *See also In re Acosta,* 2003 WL 23109775 at *14 (E.D. La. Dec. 30, 2003), *aff'd,* 406 F.3d 367 (5th Cir. 2005), *citing Wolstein v. Docteroff (In re*

*Docteroff),* 133 F.3d 210, 216 (3d Cir. 1997); *In re Wyant,* 236 B.R. 684, 695 (Bankr. D. Minn. 1999).

The evidence established that Janney knew that PCPT and PCPTLP were no longer in business when he signed the settlement agreement and promissory note with BBI in Fall 2013[5] and that they were unable to honor their obligation to BBI when the parties settled. That evidence satisfies the first and second elements of the *RecoverEdge* test.

The credible evidence also supported a finding that Janney did not disclose his businesses' status to BBI. Janney insisted at trial that he had disclosed to BBI in the course of state court proceedings that his two companies were no longer doing business and so cannot fairly be accused of misleading BBI. The defendant's uncorroborated testimony on this point is not worthy of credibility,[6] particularly in light of his insistence that he did not know he was personally liable on the promissory note despite being an experienced businessman, represented by counsel during the settlement process.

The last element of the test for nondischargeability under §523(a)(2)(A) is whether the creditor justifiably relied on the debtor's misrepresentation.[7] The evidence established that BBI had no reason to suspect when it settled its lawsuit that PCPT and PCPTLP were not operating

---

[5] Testimony of Todd Janney, February 4, 2016, p. 329, lines 5-19. Janney testified that the entities were not engaged in any business though they were still filing tax returns.

[6] Janney could have offered the testimony of his and BBI's state court counsel to substantiate his story. His failure to do so supports an inference that counsel would not have corroborated his claims and casts doubt on his version of events. *United States v. Wilson*, 322 F.3d 353, 363, (5th Cir. Tex. 2003)("[T]his circuit has long recognized that a party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party.")

[7] *Field v. Mans*, 516 U.S. 59, 61 (1995).

and could not honor their undertakings in the settlement.[8]  Thus PCPT and PCPTLP appeared to be going concerns, as far as BBI had any reason to believe.

No evidence was offered supporting a finding that BBI had any reason to suspect that PCPT and PCPTLP were not going concerns when it settled with Janney and his businesses and later when it agreed to release Janney from the consent judgment.[9]

In summary, BBI has established that Todd Janney's debt to it is nondischargeable as a misrepresentation under §523(a)(2)(A).

### B. Janney Committed Actual Fraud When He Obligated Entities to a Judgment He Knew They Could Not Pay

BBI also contends that Janney committed actual fraud by obligating entities he knew could not pay the $22,500 settlement, and thereby rendered his own obligation to BBI under the settlement nondischargeable pursuant to Bankruptcy Code §523(a)(2)(A).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *RecoverEdge*, 44 F.3d at 1293.  *See also* 4 COLLIER ON BANKRUPTCY ¶523.08 (16th ed. 2016).[10]

In *Husky Int'l Elecs., Inc. v. Ritz*, the Supreme Court held that in applying §523(a)(2)(A), "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" ___ U.S. ____, 136 S.Ct. 1581, 1586, ___ L.Ed.2d ____, 2016 U.S. LEXIS 3048 (2016).

---

[8] Testimony of Brent Bueche, president of BBI, February 4, 2016, p. 290, lines 5-21.

[9] Before settling, BBI researched the companies' standing using the corporate database maintained by the Louisiana Secretary of State.  Testimony of Testimony of Brent Bueche, February 4, 2016, p. 304, lines 13-16.

[10] *RecoverEdge* quoted from an earlier edition of COLLIER ON BANKRUPTCY virtually identical to the sixteenth edition.

Janney knew when he signed the settlement agreement and promissory note that the companies he was obligating to the settlement with BBI were out of business and unable to perform the settlement.[11]  Janney's testimony that he disclosed that fact to BBI's state court counsel before settling is not credible.

The next issue is whether Janney possessed fraudulent intent when he signed the settlement agreement and promissory note.  Only two payments—in the amounts of $1,045 and $500—were made on the settlement agreement before BBI agreed to amend the consent judgment to remove Janney personally.  PCPT, which Janney controlled, made the two payments, thereby conveying the false impression that Janney's companies were doing business.

BBI president Brent Bueche testified that he met Janney in late 2013 after the parties executed their settlement and the consent judgment.  Bueche testified that he asked Janney about payment on the debt and Janney responded that he was unable to pay because he lacked credit.[12]  Janney denied representing to BBI that he needed to be removed from the consent judgment to enable him to secure credit to pay off the settlement agreement."[13]  The evidence, however, supports an inference that he did.

The parties joined in January 2014 in a motion to amend the consent judgment to remove Janney as a judgment debtor.  Neither Janney nor his companies made any settlement payments to BBI after amending the consent judgment.  The amendment and later events support a finding that Janney misled BBI into amending the consent judgment: had BBI known that PCPT and

---

[11] See fn. 5, *supra*.

[12] Testimony of Brent Bueche, Feb. 4, 2016, p. 293, line 15 – p. 294, line 5.

[13] Testimony of Todd T. Janney, Feb. 4, 2016, p. 346, lines 19-23.

PCPTLP were not in business, it is unlikely that BBI would have willingly released the only judgment debtor potentially able to honor the settlement.

To summarize, the evidence established that Janney intended to defraud BBI by allowing it to believe that the companies it was settling with were operational and then later inducing BBI to remove him from the consent judgment. Janney's actions were knowing and intentional and constitute "actual fraud" within the meaning of Bankruptcy Code §523(a)(2)(A).

*II. Materially False Written Financial Statements under §523(a)(2)(B)*

BBI also alleges that Janney's execution of the settlement agreement itself is not dischargeable under 11 U.S.C. §523(a)(2)(B). That section of the Bankruptcy Code excepts from discharge debts for money or services obtained by "use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." BBI's claim on this count fails because the settlement agreement is not a writing respecting the debtor's "financial condition."

Statements falling within section 523(a)(2)(B) must do more than simply prompt speculation about the debtor's finances; rather, they must be "sufficient to determine financial responsibility." *In re Price,* 123 B.R. 42, 45 (Bankr.N.D.Ill.1991). In the case of an individual, for example, "statements of income and expenses or schedules of assets and liabilities" will qualify. *Id.* In contrast, transactional documents that merely imply some financial status do not qualify as statements regarding the debtor's financial condition. *See, e.g., In re Segal,* 195 B.R. 325, 332 (Bankr. E.D. Pa. 1996) (lease and promissory note were not statements regarding debtor's financial condition); *City Fed. Sav. Bank v. Seaborne (In re Seaborne)*, 106 B.R. 711,

714 (Bankr. M.D. Fla. 1989) (loan closing documents insufficient to constitute statements regarding debtor's financial condition).

The settlement agreement between BBI and Janney and his businesses incorporates promises to pay and to release claims in exchange for the payments but does not paint a complete picture of Janney's and his companies' financial condition.[14] It is not a statement about the debtor's financial condition. "Inferences that might be drawn about [the debtor's] financial condition …are not enough to bring the settlement agreement under section 523(a)(2)(B)." *In re Brzakala,* 305 B.R. 705, 709–10 (Bankr. N.D. Ill. 2004). *See also In re Feldman*, 500 B.R. 431, 438 (Bankr. E.D. Pa. 2013) citing *Cadwell v Joelson (In re Joelson)*, 427 F.3d 700, 714 (10th Cir. 2005) ("What is important is not the formality of the statement, but the information contained within it—information as to the debtor's or insider's overall net worth or overall income flow.") BBI thus is not entitled to relief under Bankruptcy Code §523(a)(2)(B).

*Conclusion*

The evidence established that Janney's debt is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) though not under 11 U.S.C. §523(a)(2)(B). The court will enter judgment in favor of BBI.

Baton Rouge, Louisiana, September 13, 2016.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[14] Promissory notes also do not comprise sufficient information regarding the debtor's financial condition to support a claim under §523(a)(2)(B) because they ordinarily are not statements respecting the maker's financial condition. *In re Oakley,* 503 B.R. 407, 430 (Bankr. E.D. Pa. 2013). *See also In re Zarkhin,* 2013 WL 5591937 at *7 (Bankr. N.D. Ill. Oct. 10, 2013) ("Promissory notes and mortgages say nothing about the overall financial health of the parties to them…"); *In re Foster,* 2010 WL 2025784 at *3 (Bankr. N.D. Ga. Feb. 26, 2010) ("The promissory note does not contain any information in writing about debtor's financial condition which is a key element of a § 523(a)(2)(B) claim"); *In re Soderlund,* 197 B.R. 742 (Bankr. D. Mass. 1996) (promissory note alone is not within the scope of section 523(a)(2)(B)); *In re Segal,* 195 B.R. 325, 331–32 (Bankr. E.D. Pa. 1996) (lease and promissory note did not constitute financial statements under section 523(a)(2)(B)).